IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID FABBRINI, | No. CIV S-07-1099-GEB-CMK |
| Plaintiff, | |
| vs. | ORDER |
| CITY OF DUNSMUIR, et al., | |
| Defendants. | |
| _____/ | |

       Pending before the court is defendants' motion for a protective order (Docs. 29, 30, and 31). A hearing was held before the undersigned on May 14, 2008, and the parties submitted supplemental briefs on May 23, 2008, and May 27, 2008 (Docs. 34 and 35). Defendants, who are a governmental entity, various members of a city council, and various city employees, "seek a protective order defining the parameters of permissible [deposition] questioning . . . so as to avoid the duplication of expensive discovery proceedings." In particular, defendants argue that the attorney-client privilege, legislative privilege, the Brown Act, and/or

///

///

///

deliberative process privilege limit the scope of permissible questioning by plaintiff.[1]

## I. BACKGROUND

According to plaintiff, his complaint "states a claim for . . . malicious prosecution, and retaliation in violation of the First Amendment." In his February 12, 2008, order (Doc 18) denying defendants' motion to dismiss, the district judge recited the following summary of the case:

> . . . The gravamen of Plaintiff's action is that Defendants caused a meritless lawsuit to be filed against him and defamed him by publishing statements about that lawsuit ("the prior action"). Defendant City of Dunsmuir ("the City") initiated the prior action following a dispute between the City and Plaintiff over a loan to Plaintiff of City funds and a lease to Plaintiff of City land. (footnote omitted). The City subsequently voluntarily dismissed the prior action.

The district judge ultimately allowed the malicious prosecution claim to proceed, but granted defendants' motion to strike plaintiff's claim that he was defamed (or retaliated against) by defendants' publication of a press release concerning the dispute and prior action.

The underlying dispute concerns the conditions for the City's approval of a loan to plaintiff and a related lease of City property. Defendants outline the following background:

> In July 2000 Fabbrini applied for a loan through the City's Economic Development Block Grant Revolving Loan Fund. (footnote omitted). Fabbrini sought $100,000; approximately $62,000 for the acquisition of the mini-storage, a warehouse, and assumption of a lease of the City-owned property (a small portion of the 100 acre Mott/Dunsmuir airport) in which the mini-storage and buildings were located. The remaining $38,000 was to be earmarked for improvements to the leased property and buildings which were being purchased. . . . At the August 16, 2000 meeting the Dunsmuir City Council adopted Resolution 2000-36, approving Fabbrini's loan up to $100,000 subject to the conditions: (A) "Every effort be made to create and retain jobs . . . (B) An appraisal of the property and the project shall be undertaken . . . and (C) Collateral in the amount of 110% shall be provided. . . ."

---

[1] In their notice of motion, defendants also assert that the following additional "privileges" apply: the First Amendment; California Civil Code § 47; and qualified immunity. Defendants do not, however, discuss these "privileges" in their supporting briefs.

At the May 14th hearing, defendants' counsel admitted that the City made the mistake of disbursing the loan proceeds before compliance with the conditions had been established. When the oversight came to light, the parties engaged in negotiations between 2001 and 2005 to resolve the situation. The exhibits submitted in support of the motion reflect the following timeline of events:

| | |
|---|---|
| August 2000 | City of Dunsmuir City Council adopts Resolution 2000-36 unanimously approving the loan to plaintiff subject to specific conditions, one of which being that collateral in the amount of 110% of the loan amount be provided. |
| October 2000 | Promissory note and deed of trust executed. |
| September 2001 | Letter from Keith Anderson of the City of Dunsmuir to plaintiff regarding lack of documentation establishing that the conditions of the loan have been met. |
| June 2004 | Letter from plaintiff to Keith Anderson enclosing payments for amounts in arrears. |
| July 6, 2004 | Letter from City Attorney James Pierce to plaintiff acknowledging receipt of payment for amounts in arrears and outlining various "problematic" issues with the lease/loan. |
| July 22, 2004 | Letter from Pierce to plaintiff regarding lack of documentation establishing compliance with the loan conditions, including collateralization. |
| October 14, 2004 | Letter from Pierce to Michael Dean, plaintiff's attorney, expressing an "understanding" that the parties are eager to resolve the lease/loan issues. |
| January 2005 | Letter from Pierce to Dean enclosing new loan documents for plaintiff to sign. |
| March 11, 2005 | Letter from Dean to Pierce indicating that negotiations are terminated due to "delays and unresponsiveness of you and the City of Dunsmuir." |
| March 14, 2005 | Letter from Pierce to Dean indicating his belief that the parties are "so close to finalizing their lease/loan relationship that it appears objectively inefficient from a variety of perspectives to now 'terminate negotiations' as stated in your March 11 correspondence." |

| | | |
|---|---|---|
| October 2005 | Letter from Pierce to plaintiff stating: | |
| | At this point in time, the Council has directed me to provide you with two options to avoid suit being filed regarding recovery of the loaned funds. The first option would be to repay the loan in full, perhaps through funds borrowed from another lender. The second option would be to execute a Deed of Trust to provide the City with an adequate security interest in the structures situated on the leased property, or other collateral. | |
| November 2005 | Letter from Pierce to Dean stating that, due to questions regarding the appropriateness of a new lease with plaintiff, those issues would have to be set aside; to "depressurize" the issues concerning the prior loan/lease, plaintiff must either "secure or pay off the loan." | |

As to the period between September 2001 and June 2004, defendants do not provide any letters or other evidence.

When the parties could not informally resolve the matter, the City Council decided at a December 5, 2005, special meeting held in closed session to initiate litigation against plaintiff to "secure the public money that the City had loaned Fabbrini." The prior action was filed in the Siskiyou County Superior Court on December 14, 2005. Plaintiff filed his answer to the first amended complaint on March 16, 2006. On June 15, 2006, the City voluntarily dismissed its lawsuit. According to a July 10, 2006, press release, the "dismissal was deemed warranted by the Council, as a group, based on a cost/benefit analysis in consideration of Mr. Fabbrini's apparent intention of conducting what the City determined to be an unnecessary amount of 'discovery' (e.g., depositions, etc.)."

## II. DISCUSSION

Defendants seek an order pursuant to Federal Rule of Civil Procedure 26(c) limiting the scope of permissible discovery in light of the attorney-client privilege, legislative privilege, Brown Act, and/or deliberative process privilege. Plaintiff states that he "desires to take the depositions of . . . [defendants] Bill Sanford and John Fisher, regarding their decision to

4

move forward with a case against him that he alleges was baseless and motivated by malice." Plaintiff also states that he "wants to inquire at deposition the basis for their decision to go forward with the case, what they knew about the underlying issues which served as the basis for their complaint, how they learned whether the claims asserted in the lawsuit were 'legally tenable,' and generally matters related to any background leading up to the decision to file, and then dismiss the lawsuit, approximately six months and many, many thousands of dollars later."

### A.     The Brown Act

In their initial brief, defendants make only passing reference to the Brown Act, which is codified at California Civil Code § 54956, as follows:

> . . . In *Kleitman v. Superior Court*, 74 Cal.App.4th 324, 332 (1999), the Court considered the discovery of information from a closed session under the Brown Act.  In upholding the confidentiality of that information the Court stated "'[t]he Attorney General has concluded that 'If the recording of a closed session discussion must be kept in confidence, it follows that oral communications of such information may not be made to the public.'" *Kleitman*, *supra*, 74 Cal.App.4th at 332 citing 76 Ops.Cal.Atty.Gen. 289, 291 (1993). The *Kleitman* Court ultimately agreed with the Attorney General – "Disclosure of closed session proceedings by the members of a legislative body necessarily destroys the closed session confidentiality which is inherent in the Brown Act. . .  Had the Legislature intended that members of a legislative body be required, upon court order, to disclose their personal recollections of unrecorded closed sessions during discovery in Brown Act litigation, we are confident that such intention would have been made express in the Act." *Id.* at 334.

Defendants do not discuss the applicability of the Brown Act in their supplemental brief.[2]

By this reference, defendants appear to take the position that anything which transpired during the closed session is not subject to discovery in this case simply because the session was closed.   Plaintiff cites North Pacifica LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1120 (N.D. Cal. 2003), and argues that this privilege does not apply in federal question cases. Plaintiff is correct.  The court in North Pacifica concluded that "the fact that the communications were made under the auspices of the Brown Act is only evidence of elements of the [attorney-

---

[2] Defendants admit, in fact, that the "Brown Act does not provide a separate basis for privilege. . . ."

5

client] privilege; it is not dispositive to the federal court's determination of application of . . . privilege." <u>Id.</u> at 1126 n.4.  Further, in <u>Kaufman v. Board of Trustees</u>, the court concluded that the Brown Act does not create any evidentiary privilege.  <u>See</u> 168 F.R.D. 278, 280 (C.D. Cal. 1996).  Instead, the Brown Act merely permits withholding certain information from the public.  <u>See</u> <u>id.</u>

### B.      Legislative Privilege

Defendants argue that, in light of legislative immunity, legislators and their staff members cannot be compelled to testify concerning legislative activities.  In particular, defendants contend "[o]ne may not inquire into the motives of a council person with respect to his or her vote."  Defendants cite <u>City of Las Vegas v. Foley</u>, 747 F.2d 1294, 1297-98 (9th Cir. 1984), in support of their conclusion that a protective order should issue limiting discovery to only relevant objective circumstances.  They assert that legislative immunity provides a privilege preventing discovery into subjective motives.  Plaintiff responds that:  (1) defendants' conduct in this case was not legislative; and (2) the district judge has already concluded that defendants are not entitled to legislative immunity.

Addressing plaintiff's second argument first, the district judge did not conclude that defendants were not entitled to legislative immunity.  Rather, in denying defendants' motion to dismiss, the district judge concluded that plaintiff's complaint survived dismissal because it alleged that the immunity did not apply given allegations that defendants' conduct was taken "in bad faith, because of corruption, or primarily in furtherance of personal instead of public interests."

Turning to plaintiff's first argument – that defendants' conduct was not legislative in nature – defendants contend in their supplemental brief that "[a] vote to institute litigation is quintessentially legislative in character."  Defendants, however, cite no authority in their original or supplemental briefs in support of this very specific assertion.  Whether an action is legislative depends on consideration of four factors:  (1) whether the act involves ad hoc decision-making,

6

1  or the formulation of policy; (2) whether the act applies to a few individuals or to the public at
2  large; (3) whether the act is formally legislative in character; and (4) whether it bears all the
3  hallmarks of traditional legislation.  See Kaahumanu v. County of Maui, 315 F.3d 1215, 1220
4  (9th Cir. 2003).  In Kaahumanu, the Ninth Circuit held that a city council's decision to grant or
5  deny a conditional use permit was ad hoc in that it was based on the circumstances of the
6  particular case at hand.  See id.  The court also concluded that the city council's decision applied
7  only to a few individuals and, thus, that application of legislative immunity was disfavored.  See
8  id. at 1222.  The court also concluded that the decision to deny a single conditional use permit
9  was neither formally legislative in character nor bore all the hallmarks of traditional legislation.
10           Similarly, this case involves the decisions to institute litigation against plaintiff
11 and, later, to terminate that litigation.  These decisions clearly applied only to plaintiff and not to
12 the public at large.  Nor did the decisions involve formulation of broad policy.  The decisions
13 were ad hoc in that they depended on the circumstances of plaintiff's lease/loan.  Finally, the
14 decisions were not the result of any ordinance or traditional legislative act.  Therefore, legislative
15 immunity does not apply because the decisions were not legislative in nature.  Because the
16 decisions were not legislative acts, defendants cannot invoke any privilege arising from
17 legislative immunity to obtain a protective order.
18       **C.     Deliberative Process Privilege**
19           Defendants contend that, even if the court concludes that legislative immunity
20 does not apply, a protective order should nonetheless issue because the deliberative process
21 privilege is not limited to legislative acts.  The deliberative process privilege was discussed in
22 North Pacifica.  The court stated that "[f]ederal common law recognizes the deliberative process
23 privilege" and that "[u]nder the privilege a government can withhold documents or prevent
24 testimony that 'reflect[s] advisory opinions, recommendations, and deliberations comprising part
25 of a process by which government decisions and policies are formulated.'"  274 F. Supp. 2d at
26 1120-21 (quoting FTC v. Warner Communications, 742 F.2d 1156, 1161 (9th Cir. 1984)).  The

court recognized two requirements for application of the privilege. See id. at 1121. First, the information sought to be protected must be "generated before the adoption of [a] policy or decision." Id. (citing FTC, 742 F.2d at 1161). Second, the information must be deliberative in nature, "containing opinions, recommendations, or advice about . . . policies [or decisions]." Id. The underlying inquiry is whether revealing the information exposes the deliberative process. See id.

Even if the privilege applies, it is qualified and can be overcome "if [the litigant's] need for the materials [or information] and the need for accurate fact-finding override the government's interest in non-disclosure." Id. In determining whether the privilege, if it applies, is overcome, the court considers the following factors: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions; and (5) the presence of issues concerning alleged governmental misconduct. See id.

It is clear that the deliberative process privilege is applicable to this case. First, the information sought by plaintiff is pre-decisional in that it concerns city council discussions about the decisions to initiate and later terminate litigation against plaintiff. Second, the information also concerns deliberative matters – the discussions among city council members with counsel present about the litigation decisions. Plaintiff suggests in his initial brief that the deliberative process privilege does not apply because the acts in question were not legislative. As discussed above, this requirement must be met for legislative immunity to apply. The deliberative process privilege, however, is not limited to legislative acts. See FTC, 742 F.2d at 1161. Whereas legislative immunity applies only to legislative acts, the deliberative process privilege is broader in that it protects deliberations regarding any act, not just legislative acts.

/ / /

/ / /

/ / /

Plaintiff cites <u>National Wildlife Federation v. U.S. Forest Service</u>, 861 F.2d 1114 (9th Cir. 1988), in support of the argument that the deliberative process privilege only applies to discussions antecedent to adoption of a policy. It appears that plaintiff relies on the following passage from the case:

> To qualify . . . under the "deliberative process" privilege, a document must be *both* (1) "predecisional" or "antecedent to the adoption of agency policy" and (2) "deliberative," meaning "it must actually be related to the process by which policies are formulated."
>
> <u>Id.</u> at 1117 (quoting <u>Jordan v. U.S. Department of Justice</u>, 591 F.2d 753, 774 (D.C. Cir. 1978)).

However, the court went on to reject plaintiff's interpretation of the deliberative process privilege. Specifically, the court held: "[W]e reject [the] suggested tripartite analysis; we will not distinguish between deliberative documents which do and do not contain 'non-binding recommendations regarding law or policy.'" <u>Id.</u> at 1118. Thus, the deliberations need not concern policy matters for the privilege to apply. As stated above, the essential inquiry is whether the evidence sought is part of a deliberative process. <u>See id.</u>

Because the privilege applies, the question in this case is whether plaintiff can overcome the privilege. Applying the balancing test, defendants argue:

> First, the City's interest in non-disclosure here is very high. This is demonstrated by both the fact that the deliberations were inextricably intertwined with attorney client privileged communications and were made in a closed session under the California Brown Act. While the Brown Act does not provide a separate basis for privilege, the fact that the communications at issue here took place in a closed session (i.e., one that fell within one of the narrow exceptions to the requirement that all meetings be open to the public), is highly probative of the City's interest in non-disclosure.
> Other factors considered are the "seriousness of the litigation," the relevancy of the evidence, and the availability of other evidence of intent. As indicated at the hearing and in Defendants initial points and authorities, the instant lawsuit is frivolous. Moreover, it is not a claim alleging a widespread policy of discrimination or unconstitutional acts but rather arises out of a contractual dispute between Plaintiff and the City—i.e whether the Plaintiff had any duty under the loan agreement to collateralize the loan and the City's decision to file an action for declaratory relief in an effort to enforce a condition of the loan given to Plaintiff. It is not a case that has widespread policy implications or affects

> the rights of anyone other than the Plaintiff.
> With respect to the availability of other evidence of intent, in *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252 (1977) the Supreme Court identified some of the circumstantial evidence that is relevant when improper motive or malicious intent is at issue: (1) the discriminatory effect of the official action, (2) the historical background of the decision, (3) the specific sequence of events leading up to the challenged decision, (4) departure from the normal procedural sequence, (5) departures from the normal substantive standards, and (6) legislative or administrative history of the decision. *Id.* at 266-68. Plaintiff has made no effort to ascertain the intent of the Defendants using any of these non-privileged sources of evidence or by employing less expensive means of discovery.

Plaintiff argues that the qualified deliberative process privilege is overcome in this case because he "is alleging that his own city government intentionally initiated frivolous and untenable litigation against him in violation of his civil rights." Thus, in essence, he is arguing misconduct as the basis for the city council decisions at issue.

The best reason to conclude that the deliberative process privilege should not be applied in this case would be because there is governmental misconduct. However, as defendants note, plaintiff has not demonstrated to the court that he made efforts to ascertain improper intent or motive through non-privileged discovery (i.e., discovery into matters other than the deliberations of the city council). This relates to the "availability of other evidence" factor and does not favor plaintiff's position. Plaintiff states in his supplemental brief that he is entitled to "discover the basis upon which defendants decided that the lawsuit against plaintiff was viable" and "any questions regarding facts surrounding what a malicious prosecution defendant knew prior to having filed suit must be determined prior to a probable cause determination." He does not necessarily need to inquire into the city council's deliberative process in order to obtain this evidence. For example, he could ask defendants, either through deposition or interrogatories, what documents or information <u>outside the city council's closed-session deliberations</u> provided a basis for initiating the prior action. Therefore, at this point in the case, the deliberative process privilege applies and has not been overcome.

The court does sympathize with plaintiff's position. From the outset, the defendants' decision to pursue litigation when the Frabbrini loan was current and only marginally undercollaterized is at least objectively questionable. Time also makes this argument more credible since the delay between the loan funding and the decision to initiate litigation further diminished the concern of undercollaterization as a result of the loan being further paid down during this period of time. The court is also concerned that the decision to terminate litigation may not have been based solely on a cost/benefit analysis, but may also have included a concern of defendants' potential exposure to paying Fabbrini's attorneys' fees under the note and deed of trust if litigation had continued. These arguments, however, do not disappear with this court's ruling, and it is certainly possible that plaintiff's preliminary discovery and investigation may produce information that would latter favor a ruling overcoming the privilege.

### D.   Attorney-Client Privilege

Defendants argue that, because the city council met in close-door sessions with counsel, the discussions at those sessions are protected by the attorney-client privilege. Defendants admit that such privilege would be waived if they asserted the defense of advice of counsel. However, they have tactically chosen not to assert that defense in order to preserve the attorney-client privilege as to the deposition discovery sought by plaintiff.

Plaintiff agrees "in theory." He states in his supplement brief:

> . . . Plaintiff agrees in theory with defendants' position – that is if, in fact, the communications were made, with [the city's attorney] Pierce acting as and giving counsel to the relevant individual defendants regarding legal issues, then it seems clear that privilege should apply absent any applicable waiver.

However, plaintiff asserts that the privilege does not protect "any and all communications" and argues that counsel's mere presence does not "ipso facto" protect all discussions at the closed-door sessions. Specifically, plaintiff states that defendants have not presented evidence to establish that they sought the advice of counsel at the closed-door sessions and, therefore, have failed to meet their burden of establishing that the attorney-client privilege should apply.

1       Plaintiff is correct that defendants appear to state the attorney-client privilege rule too broadly.  Defendants argue that all statements made by city council members in closed session "with the City attorney" are protected.  However, as defendants acknowledge elsewhere in their briefing, the privilege only extends to "confidential disclosures made by a client to an attorney in order to obtain legal advice . . . as well as an attorney's advice in response to such disclosures."  See In re Grand jury Investigation, 974 F.2d 1068, 1070 (9th Cir. 1992).  Thus, the city attorney's mere presence at the closed sessions alone is not enough.  The privilege would only apply if defendants can establish that the purpose of the closed session was to obtain advice

      Defendants have provided the authenticated meeting agendas for the Dunsmuir City Council indicating that, on November 18, 2005, December 5, 2005, and December 16, 2005, the council met in closed session for the following purpose:  "Conference with Legal Counsel – Anticipated Litigation (54956.9) – One Case."  There is also an authenticated agenda indicating that the city council met again on June 9, 2006, to discuss with legal counsel the pending litigation against plaintiff.  A press release on July 10, 2006, indicates that the city council did not believe that continuation of the lawsuit was warranted given the costs of litigation.  The agendas serve to satisfy defendants' burden of establishing the nexus between the discussions at the closed-door sessions and advice of counsel.  Therefore, the attorney-client privilege applies.

      In his supplemental brief, plaintiff addresses a related issue – whether a defendant to a malicious prosecution action can invoke the attorney-client privilege while, at the same time, forego reliance on the defense of advice of counsel.  He states that he has not been able to find any primary or secondary authority addressing this question.  However, plaintiff asserts that "a finder of fact should be able to draw an inference from the assertion of privilege. . . that defendants were advised that the claim was untenable."  There is no basis for such an inference.  It is just as likely that counsel advised defendants that the action was in fact tenable.  Plaintiff is comparing apples and oranges given that the attorney-client privilege and defense of advice of counsel are different things.  The defense is a shield to liability on the merits whereas the

privilege merely protects certain communications and does not go to the merits. One is a substantive merits issue; the other is an evidentiary issue.

### III. CONCLUSION

Of the three privileges discussed above – the legislative privilege, the attorney-client privilege, and the deliberative process privilege – the latter is the most broad in that it encompasses all deliberative discussions antecedent to the city council's decisions to initiate and later terminate the litigation against plaintiff. The legislative privilege does not apply because the decisions at issue were not legislative acts. Defendants have met their burden of establishing that the attorney client privilege applies. In addition, absent a showing from plaintiff based on non-privileged sources of an improper motive, the deliberative process privilege applies to the discussions at the closed-door city council sessions and covers all discussions at those sessions.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for a protective order (Docs. 29, 30, and 31) is granted; and

2. Plaintiff may not inquire at deposition or through other discovery into any matters discussed at the closed-door sessions of the Dunsmuir City Council held on November 18, 2005, December 5, 2005, December 16, 2005, and June 9, 2006.

DATED: June 18, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE